Scott v. Johnson *et al.*

---

No. 25,123.

Robert Scott, *Appellee,* v. W. R. Johnson et al., *Appellants.*

SYLLABUS BY THE COURT.

Action to Vacate Default Judgment on Note — *Petition Amended — No Change of Cause of Action—Judgment Against Plaintiff Herein by Default Pursuant to Prayer of Amended Petition — No Fraud Against Plaintiff Herein.* In an action on a promissory note, facts were stated by answering defendants sufficient to render a codefendant, who was served with summons but made default, primarily liable. Afterwards the answer was amended, by adding an allegation that he was primarily liable, and a prayer for judgment accordingly. He knew what the original answer contained, but was not notified of the amendment. *Held,* judgment pursuant to the prayer is not subject to vacation by petition on the ground of fraud.

Appeal from Pottawatomie district court; ROBERT C. HEIZER, judge. Opinion filed March 8, 1924. Reversed.

*A. E. Crane,* of Topeka, and *W. F. Challis,* of Wamego, for the appellants.

*William E. Smith,* of Wamego, *R. P. Evans,* and *George Clammer,* both of Manhattan, *E. C. Brookens, E. S. Francis,* and *Harry Hart,* all of Westmoreland, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The action was one to vacate a judgment by default, on the ground of fraud practiced by the successful party. Plaintiff prevailed, and his adversaries appeal.

Scott was president of the Grand Clear Creek Tunnel Company, a Colorado corporation, and cashier of the First National Bank of Wamego, Kan. The tunnel company needed money. Scott and seventeen of his associates in the tunnel company gave their note to the corporation, which was indorsed to the bank. Afterwards, individual members of the board of directors of the bank took up the note, and the bank indorsed it to them without recourse. On August 30, 1917, the holders of the note sued the makers and the tunnel company, in an action entitled *W. R. Johnson et al. v. Grand Clear Creek Tunnel Co. et al.* The petition was in the ordinary form to recover on a promissory note, and Scott was served with summons on September 1. On March 20, 1918, all the makers of the note except Scott and another, joined in a verified answer. Two defenses were interposed. One was that the instrument did not become binding on the answering makers for breach of condition precedent to delivery, a fact of which the bank officers had knowledge. The statement of the other defense included the following:

"It [the note] should be paid in the following manner: by the payee in the note, Grand Clear Creek Tunnel Co., through its officers, who would sell the stock of said corporation and from the proceeds thereof pay said instrument, and in the event that they should not sell a sufficient amount of stock to pay said obligation, then these defendants were to pay their proportionate share. These defendants further allege that said corporation, through its agents, Robert Scott and others, to the defendants unknown, sold enough stock of said corporation from the proceeds thereof to have paid said instrument, if a valid obligation, but said agents converted said proceeds of said stock to other purposes without the knowledge and consent of these answering defendants, all of which facts the First National Bank and its officers had full knowledge. . . . "

Scott made no answer to the petition, and neither attacked nor pleaded to the answer. His bank associates, the plaintiffs, how-

ever, filed a motion to require the answer to be made more definite
and certain, and on April 3, the answering defendants were given
leave to amend generally within thirty days. The answer was not
amended within thirty days, and the cause was continued at several
succeeding terms of court. At the October and December terms
additional time was given in which to amend, but the answer was
not filed within the periods allowed. On August 14, 1919, the at-
torney for plaintiffs consented to filing the amended answer out
of time, and on August 16 it was filed.

The amended answer was verified, and restated the charge against
Scott, contained in the original answer, as follows:

"These answering defendants for a third defense allege that if it should be
found that the foregoing note sued upon is valid and binding against these
answering defendants, it was agreed by and between the officers of the de-
fendant, the Grand Clear Creek Tunnel Company, a corporation, and these
defendants, that the note should be paid by the sale of the stock of the com-
pany, and the same was left in the hands of the officers of the aforesaid cor-
poration, and Robert Scott, its president, was to handle the same, sell the
stock, and pay the note, and he did sell the stock in an amount sufficient to
pay the aforesaid note, but instead thereof, converted the same and used it
for other purposes; . . . "

Failure to give details of sales of stock was excused, knowledge
of and consent to misappropriation of proceeds of sales were de-
nied, and it was alleged Scott was primarily liable on the note.
The prayer was that if plaintiffs recovered, the answering defend-
ants be adjudged to be secondarily liable only.

On August 29, plaintiffs replied by general denial and by alleging
that Scott had no authority to bind the bank or its directors by
what he did. Scott took no notice of the amended answer. The
cause came on for trial on September 8, 1919, and on that day
judgment was rendered in favor of the holders of the note against
Scott as principal and against the other makers as sureties. Plain-
tiffs voluntarily dismissed the action as to the tunnel company, the
defendant other than Scott who did not answer, and another defend-
ant who had limited his liability to a small sum.

On the day judgment was rendered against him, Scott called the
clerk of the district court by telephone, and was told that judgment
had been rendered holding him to be primarily liable, and his co-
makers to be secondarily liable only. Scott then for the first time
employed an attorney. On the second day after the judgment was
rendered, Scott and his attorney went to the county seat, and the

attorney was instructed to file a motion for new trial. The motion for new trial was not filed until September 13, and so was not filed in time. The petition to vacate says the motion was not filed in time "through inadvertence." It was considered by the court on April 23, 1920, when it was dismissed at Scott's cost. The present action was commenced on May 18, 1920.

Portions of R. S. 60-3007 read as follows:

"The district court shall have power to vacate or modify its own judgments or orders at or after the term at which such judgment or order was made:

"*Fourth.* For fraud, practiced by the successful party, in obtaining the judgment or order."

Scott's petition recited the proceedings in the suit on the note, and contained the following paragraph:

"Plaintiff alleges that the making and filing of the amended answer out of time without the consent of court and without any notice to this plaintiff or knowledge on his part, together with the entering of judgment upon the issues so joined, as hereinbefore fully set forth, was a fraud practiced by the defendant filing said amended answer upon the court and upon this plaintiff, and that the court was deceived and induced thereby to assume jurisdiction of the subject matter of said amended answer and to render said judgment against this plaintiff, differing materially and vitally from the relief prayed against him in the original petition. Plaintiff further avers that under the circumstances hereinbefore set forth, the court had no jurisdiction to render the judgment aforesaid, and that the effect of the complete change in the issues of said action, created by the filing of said amended answer and judgment thereon, was to deprive plaintiff surreptitiously and fraudulently of his right to defend against the false and fraudulent allegations in said amended answer and cross-petition contained."

Of course the court had jurisdiction to render the judgment. If jurisdiction had been lacking, the defect was cured by the general appearance entered by filing the motion for new trial. The fact that the judgment rendered was not in accordance with the prayer of the petition is not important. Scott alleged that he conferred with the holders of the note and their attorney respecting the commencement and conduct of the suit, and he and Johnson had an understanding judgment would be taken according to the prayer of Johnson's petition. That, however, was not an affair of the answering defendants. They frankly treated Scott and the holders of the note as common antagonists, and the question is whether the answering defendants procured their judgment against Scott by fraud.

Verbal characterization of what occurred as surreptitious and

fraudulent is unavailing.   The fraud mentioned in the statute is actual fraud, as distinguished from fraud in law, and involves intentional wrong committed with purpose to deprive a party of some right or privilege.   Besides that, the fraud must be outside of the main controversy.   The petition to vacate must disclose both fraud and a defense.   The issue of fraud is first tried and decided, and after that validity of the defense is adjudicated.   Until conduct of the prevailing party has been established which inhibited fair submission and determination of the main controversy, it is not material that judgment might have been prevented if a defense had been made.   (R. S. 60-3011; 60-3012; 60-3013; and annotations.)

In this instance, what did the answering defendants do to defraud Scott?   In the original answer they charged Scott with conduct which, as a matter of law, made him primarily liable on the note, as between him and his comakers.   Scott does not complain of this answer, and in his testimony, after evading for a time candid response to questions propounded by both counsel and the court, he finally admitted he knew all about the charges made against him in the answer, from the time it was filed.   He says, however, the answer was amended.   The charges of the amended answer were in substance and effect identical with those contained in the original answer.   The additional allegation, that he was primarily liable, was a conclusion of law, and the only noteworthy change in the pleading consisted in appending a prayer for relief justified by the facts.

Scott says, however, the answer was not amended within the thirty days allowed by the court.   There was nothing covert about filing the amended answer.   One of the attorneys for the answering defendants testified as follows:

"I am acquainted with the plaintiff, Robert Scott. I remember having had a conversation with him some time in September, 1918, in the bank. The conversation was as follows: In September, 1918, court convened at Westmoreland, and we had not filed an answer according to the order of the court, the amended answer, and I came down here from Westmoreland and came to the bank and asked for Robert Scott. He came forward, and I asked him if he had the books of the Grand Clear Creek Tunnel Company here, and he said he wasn't certain just what books there were here. I said, I cannot amend our answer without the books, and if you haven't the books here, I cannot amend this answer. He said, a part of the books are in Colorado. So then I said, it will be impossible for us to amend the answer, and I will have to ask for a continuance of the case until you can get the books. Well,

he said, do you think you can get the case continued? I said, I don't know, I can try. Well, he said, you get the case continued, and I am now negotiating with some people, and it may be before the next term of court we will have money enough to pay off this thing and stop this litigation. I said, if you think you can do that, I will do the best I can to get this case continued, and I went back. . . . I got the case continued, and I remember we told the court we could not amend the answer because we did not get the data."

When on the witness stand Scott recalled much of this conversation, and testified as follows:

"I don't remember about your saying that you wanted the books to prepare an answer, nor that you could not do so without the books, but I do remember of telling you that the books and records, a part of them, were out in Colorado. . . . I don't remember anything about your saying that you could not file your amended answer unless I had all of the records of our company. I do not say that you did not say so. I don't remember."

Several extensions of time in which to file the amended answer were granted in open court, on application. Plaintiffs consented to filing the amended answer out of time, and it was filed in ample time for reply. Scott testified he gave no attention to the case, and consequently the mere matter of time of filing was not material to him; and there is no evidence which warrants the inference that the answering defendants sought to trick or deceive or take any advantage of either Scott or the court by praying for the relief which the premises laid in the original answer warranted.

Scott testified as follows:

"I supposed the first answer was on file when he [Forrester] told me the case would be for trial the next week, and in that answer they claimed I had sold enough stock to pay the note and had converted it to my own use."

The result is, the fault of the answering defendants reduces to this: They added a prayer for proper relief to their answer, and took judgment accordingly, without serving notice of the amendment on Scott.

Generally, a defendant served with summons is in the case for all purposes until it is disposed of. Parties are not expected or required to keep notifying a persistent defaulter every time some step is about to be taken which might affect his interest. Cases to this effect are numerous. It has been held to be erroneous to take a default judgment upon a pleading amended, without notice, by enlarging or materially changing the cause of action. In such cases the remedy is by the ordinary proceeding for the correction of error. The taking of such a judgment, however, has never been

held to constitute fraud, within the meaning of the section of the civil code governing this controversy.

The petition to vacate employs expressions which indicate a purpose to rely on the decision in *Beekman v. Trower*, 82 Kan. 327, 108 Pac. 110, which reviews some of the cases referred to in the preceding paragraph. The Beekman case involved a deliberate attempt to accomplish fraud by abuse of court procedure. The action was one to foreclose a mortgage, and the landowners answered by unverified general denial, which of course raised no issue. A second mortgagee was a nonresident of the county and, with the pleadings in the condition described, he entered his voluntary appearance. Six days before judgment was taken the landowners filed an amended answer, praying for cancellation of the mortgage (in form a deed), on the ground the debt had been paid, and judgment was actually rendered cancelling a perfectly good $5,000 lien. The fraud was as patent as it was flagrant, and a petition to vacate the judgment was sustained. In the opinion by Mr. Justice Graves it was said:

"When Beekman entered his voluntary appearance he was bound to use due diligence to protect whatever interests he might have in the action. Neither the petition nor the answer, however, suggested any facts which he was called upon to notice. He might have filed a cross petition and had his warranty deed foreclosed as a second mortgage, but he was under no obligation to do so and he chose to let the opportunity pass. The other parties had filed such pleadings as were presumably satisfactory to them. It was not a case where other lienholders might come in and assert rights inconsistent with Beekman's interest. There was no occasion for him to anticipate the possibility that a contingency might arise in which it would be necessary for him to be present in order to protect his rights, and therefore it can not be said to be a want of due diligence for him to let the action go without further attention." (p. 331.)

In this instance, Scott testified that some of the comakers of the note were not willing to pay and, after consultation with the directors of the bank, he approved the suit as a means of getting a settlement. When the answer came in, one of the defenses was nonliability on the note because of his misconduct of the tunnel company's affairs. If the answer were not good against the bank directors, it spelled primary liability on his part. The answer not merely suggested, but shouted, facts which he was called on to notice. A cause of action in favor of his codefendants was plainly stated against him. The case was one in which his codefendants

Salthouse v. McPherson County.

.might well ask for relief in accordance with the pleaded facts. There was occasion for him to anticipate that he ought to be present to protect himself, because he knew what the answer contained. The amendment made no substantial change in the charge against him, he was required to know the legal implications of the charge, and he neglected refutation at his peril.

Scott testified concerning a contract between himself and E. G. Forrester, made a week before the trial, in which Forrester agreed to pay the note. He further testified that the contract was renewed after judgment was rendered, and consequently the nature of the judgment is not a matter of importance as between Scott and Forrester.

The judgment of the district court is reversed, and the cause is remanded with direction to deny the petition to vacate.